Yes, Your Honor. May it please the court, Your Honors. My name is Zachary Ayers. On behalf of the appellant, Vincent Nicholas Petrushkin, and I reserve three minutes of my time. So the main issue here in this case is whether the district court abused its discretion when it sentenced Mr. Petrushkin to a 48-month sentence that was disproportionate to his actual conduct and substantially unreasonable when it failed to state its reasons of the sentence and not follow the agreement of the parties, which at the time was 12 months and a day when the plea agreement was entered into. And then by the time he got to sentencing would have been and was requested by both parties as time served. Now, 18 U.S.C. 3553 states that the court shall state its reasons on the record. And what we have here is the district judge did not, the sentencing district judge, because there were, to be clear, there were two district judges in this matter. One took the plea. That judge eventually came to the Ninth Circuit. The... Well, didn't he in effect give his reasons because he recalculated the guidelines? And to make that recalculation, he had to, in effect, express certain opinions about what he thought was the underlying conduct. I disagree with that in one respect, because when you look at the transcript as it's written, he doesn't, the final district judge does not indicate that was a reason for why he picked 48 months for Mr. Petrushkin. What you have in the sentencing transcript is you have the court, the district court goes through the original guideline calculation as the pre-sentence report indicates. Then he makes an alternative finding for the guidelines. Then the parties get to state their, what they, what sentence they're asking for on behalf of Mr. Petrushkin. The government asked for time served. Mr. Petrushkin's attorney, myself, asked for time served. The court asks only three questions. One, how long were you in, how long was your prior sentence? A year and a half. How long have you been out prior to the commission of this offense? Three weeks. And then does Mr., did Mr. Petrushkin have anything else to say? No, he didn't. And so the judge goes and says, 48 months based on the plea. And that's it. There's nothing. So, isn't it implicit in that, that his primary reason for imposing this sentence was he felt this guy was in need of much more specific deterrence. He had utterly disregarded the effect of his prior conviction and his, and he, as soon as he got out, he was at, at it again. Isn't, isn't that, you and I may disagree that that was the right way to go, but isn't that in effect a statement of reasons? I disagree as that being a statement of reasons and you can't imply from this record. This judge, it says in 18 U.S.C. 3553 that the district court shall state its reasons. The problem we have is the district court provided no reasons. It's, implying it doesn't state the reasons. So, if we send it, if we with you and we send it back, I thought you were also challenging his recalculation of the guidelines. I was challenging the original calculation, not the newer version of it. Okay. So, I, so if I was unclear in my brief, I apologize. The original calculation that was in the present, as we see in the pre-sentence report, is what I challenged. And so, that's, those were the particular challenges that we have. And the, and what we have to go back to is we have to look at the facts of the situation that took place. And what took place is, where, where's the passage of the firearm? From who to who? And I would direct the court to... Or as my English teacher mother would say, from who to whom? But that's all right. Who to whom? I appreciate the correction, Your Honor. You know, if I'm going to be an English professor, it's from whom to whom? That, yes, thank you. Well, before we go down the path of grammatical lessons here, one thing I, is, my understanding is the government isn't relying on transfer, but is relying only on possession. Yes, that's what the government is. And, and they would have to show that the quality of Mr. Petrushkin's possession meets the standard under 2K2.1C1. So, that's an interesting question, because the original district judge had a question as to, at the change of plea, as to what was the Ninth Circuit case law. And even if it's, even if it's momentary, it's merely constructive. Here, we're looking at the sentencing, there's a little more flexibility in that argument, and that the momentary possession is, was five seconds or less by Mr. Petrushkin. And I would, again, direct the court to 3ER104 through 106, the report that's under seal. That indicates we're transferred from Mr. Burns to Mr. Holmes. Mr. Petrushkin, it's been transferred to Mr. Petrushkin because he wanted to admire it. And then he quotes, hell yeah, in admiration, hands it back to Mr. Holmes. And then you have that, intervening event where Mr. Holmes would say, stay in the car, and then Mr. Holmes commits all the rest of the crimes. So, what I'm saying here is that, for that momentary possession, a 48-month sentence is excessive. That's what we're saying, Your Honors. Now, if it's, if the possession is long enough, and I understand you saying that it's not, but if the possession is long enough, within the meaning of the guideline, was it a possession with knowledge or intent that it would be used in connection with another offense? I, well, I don't think he knew that at the time, entirely. Well, he knew he was going to get out of the car and use it for something. Well, we didn't, I don't think Petrushkin knew what Holmes was ultimately going to do. That's the problem. Well, he knew he was going to rob the guy. He, well, before the gun ever came out, he didn't know, there was another individual named Spider that they were talking about. But, the problem we have there is they never encountered a person named Spider on that day, on November, I believe it was November 9th of 2021. And then, the gun did not come out until Mr. Burns brought it out in the car, just before Holmes was to do the deal with the agent. Okay. So, he didn't know what... I understand the arguments, but I'm really interested for the moment in this construction of the guideline, how I'm supposed to understand it. If, and I don't ask you to concede this, if the state of his knowledge was enough that he knew it was going to be used in another offense, and if the five-second possession is enough, is the guideline, part of the guideline satisfied, the part of the guideline that says possessed with knowledge or intent that it would be used or possessed in connection with another offense? I don't think it's satisfied, because he ultimately did not know what Holmes was going to do to that agent. No, I ask you to assume for the moment that he knew. And I understand your argument that he did not, and I may end up agreeing with you on that point, but I'm just trying to understand the guideline, and then I'm going to try to apply it. Well, I... What I'm trying to say is I read the guideline. If he possesses it with the knowledge that it will be used in another offense, I think he qualifies under the guideline. Is that right, or is that wrong? Well, that may be what the guideline says, but I'm saying, what I'm saying is he does not know his actual... No, no, you're arguing... That's where I... You're arguing, but he doesn't possess and that he doesn't know. I get it. Well, following up on Judge Fletcher's question, assume that we think there's enough there for the judge to have concluded that he knew what the gun was going to be used for, but his momentary possession had nothing to do with that. It was, in your words, he just wanted to admire, hey, you got a nice gun there. Does that, in your view, satisfy the guidelines? Momentary possession? The momentary possession does not reach the level that he knew that what was going to happen next entirely. No, but I... We're asking you to assume for the purpose of answering this question that he did know. So put aside your doubts about that. Assuming he knew, but nevertheless, his momentary possession had nothing to do with furthering that plan. It was just to admire the gun. It was an independent, if you will, act. In your view, would that satisfy or not satisfy the guidelines? It could. It could. I don't have a great answer for you, Your Honor, so it could. It's possible that it could. In making that assumption.  So I would also, seeing as my time is coming to an end, I would just say that this is a plain error case because the judge didn't look at the express the totality of the circumstances and state his reasons on the record. That's why the sentence was ultimately substantively unreasonable in light of the circumstances for Mr. Petrushkin. Thank you. Good morning, Your Honor. Ian Garrix, United States. I'll just address briefly the momentary possession issue that the court discussed with counsel that was discussed at the change of plea, and the parties both agreed that momentary possession was enough under the law. And, in fact, there is also constructive possession. So whether by a felon or for this guideline purpose, here there was actual physical possession for the five or so seconds. The problem is how do we reconcile that with our cases, interpreting possession like Roughton and Valenzuela, where we have said possession, and you briefed this, right, that possession, the quality of the possession, has to facilitate or at least potentially facilitate the other crime. And, you know, you spent a lot of your briefing arguing why that is a reasonable inference from the facts. Right. But there's if. To me, I have trouble finding that this momentary possession actually facilitated Mr. Holmes's crime, if I think if it just hadn't occurred and the gun had been transferred to Mr. Holmes by the other third party, right, and Mr. Patrushkin hadn't just briefly held it and looked at it. I can't see how anything would have changed. I don't see how Mr. Patrushkin's act of holding that gun for a few seconds had any impact whatsoever on what occurred next. And that is the heart of the issue. It's not so much the possession, but whether or not under this court's case law for 2K2.1B6 and C1, whether or not it emboldened the commission of the other offense, which here was the robbery. And that goes to the defendant's intervening arguments or intervening events argument. And in this context, the government would argue that the chain of events was not broken. And essentially, the court had many facts before it from. Well, before we get there, do you agree that the possession had to, in some way, embolden the other offense? In under this court's case law with regard to 2K2.1B6, the plus four levels for possessing and connection with another offense has been interpreted that it can't just be there and there's another offense, but there is some effect of emboldening it. Do you have any basis? I mean, it seems to me that the similarity in wording between B6 and C1 would mean that that interpretation of B6 applies also to C1. And I didn't read your brief as arguing otherwise. You can make that inference because the government believes that there is emboldening under either, and I can get to that in a minute, that it did embolden this offense. But the C1, the commentary refers to the relevant conduct guidelines in 1.3, and that's a different issue because 2K2.1B6 is not referring to the relevant conduct. And the government would submit that it's likely even broader under that standard. The Rooten address, it doesn't address the relevant conduct issue. It addresses that emboldening. But in either event, there's two universes where the court can affirm the district court, and that's under both of the sentencing calculations that the court found in this particular case. Let me understand your answer or set of answers. As I'm reading C1, there are alternative grounds. One, if the defendant used or possessed in connection with, then there's a comma, or possessed with knowledge or intent that it would be used. And you're saying that he has to satisfy the first of those in order to qualify under the guideline, and you're not relying on the second provision under C1 which says possessed with knowledge or intent that it would be used? It can be satisfied under either of those provisions. And the second of the provision doesn't say anything about in connection with. I can't get that guideline, Your Honor. All it says is with knowledge of. Right. And in this case. Yes. The first subsection is in connection with the commission of an intended or attempted commission of another offense. And then the other is with knowledge of or intent that it would be used in. Well, actually, both provisions used in connection with another offense, Your Honor. So it's in both of them. You're saying the language with knowledge or intent modifies both clauses, both? No, I believe with the intent or knowledge modifies the second section. There's two. It says in the first part of C1, if the defendant used or possessed any firearm or ammunition cited in the offense of conviction in connection with the commission or attempted commission of another offense. That's one way in which C1 is satisfied. The other way is or possessed or transferred a firearm with knowledge or intent that it would be used or possessed. So the first clause would seem, given the second clause, would seem to me that he's committing the offense and the second clause is someone else is committing the offense, but he knows about it and possessed it or transferred it in that connection. So the question is, I can see your argument for the second clause. I'm not quite sure what your argument is for the first clause. In that there is also an argument there because he did hand the firearm back to Mr. Holmes, who at that time the defendant knew that a robbery would. That's the second clause. I understand that argument, but I don't see how you fit the first clause. Well, the argument can be made because his handing of the firearm is, and that's the inchoate offense where he's assisting Mr. Holmes or partaking in this conspiracy for robbery because he knows about it and he's partaking in that. I mean, the whole premise of our conclusion in Roughton was that mere possession is not enough. That merely possessing a firearm, even while committing another crime, is not enough unless that possession emboldens or facilitates the other crime in some way. But now under your interpretation, essentially mere possession for just a few seconds would be enough because Mr. Patrushkin knew, let's say assumed, knew that another crime would occur. And I guess I'm trying to understand why we should conclude that that's enough given that in other cases we've said the defendant's possession has to be more culpable than mere possession, right? That it has to actually have some effect on the other crime. And while, you know, is the mere knowledge enough so that essentially there's an affirmative duty, he should not have given the gun back? I mean, I think that's, you know, or he should never have touched the gun. And maybe this case is, you know, if we take it that far, you know, what if someone's, you know, spouse is in the same house? They could be charged with constructive possession. Maybe they know that their spouse is going to commit a crime. Are they going to be chargeable or sentenced under this? That's the factual question. The court previously was dealing with the legal question of what that 2C.1.1 means. The factual question, which I can address now, is before the court in the record between the PSR, the factual basis of the plea agreement, the objections filed by the defense. The plea agreement was before the court. And in the plea agreement, what defendant stated, because this is defendant's statement in the plea agreement, not just what happened but about his interview to law enforcement where defendant, these are his own words, he says he and Holmes, the shooter, met third-party Serio. Holmes, the shooter, told Serio they, including Mr. Petrushkin, were going to meet someone, and Holmes was going to rob that individual. Mr. Petrushkin knows this. When they get to the Motel 6, Burns, the third-party Serio, produces the Glock 17. This is what Petrushkin says to Holmes to use it for protection during the transaction. This is all in the facts. The defendant handled it, inspected it, gave it to Holmes. Holmes exits the vehicle, and then they flee. What's also telling is his report. I may go slightly over time, but at ER 104 to 106, this is defendant's report of interview with the FBI, which was provided to the district court by way of defendant's objections to this particular guideline. And this is what defendant himself said and knew. He says that after Serio joined defendant and Holmes, defendant thought, this is in quotes, defendant thought they were going to rob someone but didn't know at that time it was for a gun. Defendant then tells the officers when they arrive at Motel 6, Holmes, who's Whiskers, the nickname, says, I'm going to do this by myself. The defendant says, well, I'll take off my jacket. Counsel, I understand, and there is a factual dispute, or what is the reasonable inference from the facts, but I actually do have an interpretive question still, which is there's Clause 1 and Clause 2. There's Clause 1 that was interpreted by Routen as requiring more than mere possession. Correct? Are you with me so far? If we're talking about Routen applies to 2K241B6.  And then we have to make an inference that it means the same thing in the other subsection. And then there's Clause 2, and I understand you're not conceding that because of the relevant conduct comment. But then on the second clause, there's possession with intent or knowledge, I believe, knowledge that the gun will be used in connection with another crime. And I'm trying to understand, for the second clause, whether any type of possession, construction, constructive possession, fleeting, or whatever, so long as there is knowledge, you think that's satisfied, the Clause 2, that the mere possession with intent or knowledge is enough. They possess the firearm with the intent or knowledge, knowing that it's going to be used in another offense. Then that tracks the language. And here, that's exactly what Mr. Petrushkin knew. Because when defendant in the emboldening, he says, hell yeah, when he looks at the gun, emboldening the shooter to go for it, and then Holm takes the gun, racks the gun in front of them, and then he tells them it's over a gun. So there's no dispute that he knew what was going on. That he had transferred the gun, said, hell yeah, that Holmes is getting out of the car, he's going to rob someone, and it's over a gun. So he is both emboldening under 2K.21b6, and he has knowledge that that other offense is going to occur by him passing the firearm to him. And in either universe, the defendant has stipulated to 2K, the application of 2K.21b6, the plus four, and the court, the district court, made an alternative finding, and the defendant stipulated to the application of that guideline. And the court found, in any event, under either guideline calculation, the higher for the NCOA guideline, or of 110 to 120, or 77 to 96, that it still went down to 48. So, but even under the... So what do you say to the arguments that your adversary led off with that the judge never really articulated the reasons for his sentence? It was clear before the court, as Your Honor indicated, because he had to go through the whole guideline analysis as to why 2K.21c1 applied this, the whole transaction. It was clear he was very familiar with the facts, and he also, based on the 3553 factors, he doesn't, under CARDI, he doesn't need to check them off. It's not a checklist, but he knows that he just released from prison three weeks ago, was in for a year and a half, and then his criminal history is a Category 6 with multiple convictions. So if his reasons under your view were, number one, that a higher guideline applied, and number two, that he had not learned his lesson, for lack of a better way to put it, and we disagree with the first but not the second, do we have to remand? That it wasn't for deterrence? No. If we agree that he articulated, albeit through questions, that one of the reasons for his sentence was that the guy was a recidivist and on a very short term, you know, as soon as he gets released, he commits a new crime. But the other reason you said was implicit in his changing of the guidelines was his determination that the guy was, in effect, more involved in the underlying event, that his possession was in some sense facilitating, and particularly his remarks afterwards. Okay. So my question to you is if we disagree with you as to the guideline change, but we agree with you that the judge did do enough to articulate his reasons for saying this guy was a recidivist who needed more punishment, do we still have to remand or is the latter sufficient? The government believes the latter is sufficient under 3553, even if the guideline wasn't changed. The facts are before the court, the sentencing facts, and the court has to make the advisory guideline calculation, which were in both instances. Right, but if he's operating under the assumption, which in my hypothetical is erroneous, that the guideline should be much, much higher than the parties had stipulated, then don't we still have to send it back? Because once he knows of that error, what I'm hypothesizing was an error, then he may change his mind as to what would be the appropriate sentence, even given his recidivism. No, the government doesn't agree with that analysis because the government believes the 3553 factors that the court relied on were self-evident, independent of that guideline calculation. Well, how do we know that? Because he doesn't say it. He gets answers to the questions, and he doesn't tell us at all what those answers mean to him. We can infer that, but he doesn't say it. He says he's, I believe in the record, he's considered the purposes of the sentencing statute referring to 3553. He talks about... Yes, but your answer says it's irrelevant what the guideline calculation is to the sentence he imposed. That doesn't make any sense to me. Judges pay attention to what the guideline range is. Yes, Your Honor, but the court has also, the district court has also heard argument from the parties on the 3553 factors. Yes, but our law says that the district judge has to tell us how he or she evaluates the 3553, and we're pretty generous in the sense of inferring, reading between the lines, and so on. But he here says very little, and it seems to me an entirely plausible inference that his sentence is influenced, maybe even substantially influenced, by the guideline calculation. And if his guideline calculation is wrong, I can't see how we don't send it back for resentencing. Again, the government stands by its argument. Well, I understand that, but... It's in our brief, and it's the same argument I'm making here, but in either event, and additionally, that even the lower guideline range was agreed to by the defense here, by his stipulation. We've given you extra time. Yes, it's gone way over time. Thank you, Your Honor. I'll give you your three minutes, Henry Bono. Again, I just reiterate that there simply was no reasoned analysis of the 3553A factors on the record by the district judge, because it didn't take place. That was not stated on the record of sentencing, and it didn't reason what happened in the case. It didn't reason what his ultimate history was. There's just no analysis whatsoever by the district court as to this sentence, and that's why we're asking the court to ultimately send it back and resent. Supposing he had said, you know, regardless of the guidelines, regardless of the other 3553 factors which I've looked at, to my mind, there's one glaring factor here, and that's his recidivism at such a short period of time, and that's why I'm imposing the sentence. If he had said that, would that have been enough? I would think he would need more than that, actually.  Why he would need more than that? To explain, to show what, you know, why the sentence fits those 3553A factors, whether it's to prevent, you know, for him to follow the law, I mean, for Petrushkin to promote respect for the law and all the guideline factors that are required in... In my hypothetical, he says, I've considered them all, but there's one that is much more in the facts of this case glaring than any of the others. Why isn't that sufficient? Because it's one piece of the overall person that he's looking at, that the district court's looking at when they're sentencing, and there's more to understanding what's happened, whether it's based off not just that, but the government's motion, the momentary possession, who the firearm passed to, the fact that, you know, Mr. Petrushkin saying, hell yeah, to the firearm did not embolden Mr. Holmes, but in fact, Mr. Burns' providing of that firearm emboldened Mr. Holmes. That's... That would be the reason analysis that would explain a sentence. All right. And that's... And just for the remainder of my time, Your Honor, he just simply did not state his reasons on the record at all under 3553C. Thank you, Your Honor. Thank you.  Thank counsel for their arguments. This matter is submitted.
judges: FLETCHER, SUNG, Rakoff